UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Emmalee Martens, as Personal Representative
of the Estate of John Christopher Rooney,

          Plaintiff,

v.

Amy Karin Hogan (f/k/a Rooney),

          Defendant.

Civil No. 17-5169 (DWF/DTS)

MEMORANDUM
OPINION AND ORDER

Samantha J. Graf, Esq., Johnson/Turner Legal, counsel for Plaintiff.

Craig T. Dokken, Esq., Henningson & Snoxell, Ltd., counsel for Defendant.

## INTRODUCTION

Plaintiff Emmalee Martens ("Martens" or "Plaintiff") is the personal representative of decedent John Christopher Rooney's ("Rooney") estate. Before Rooney passed away, he obtained a life insurance policy from Anthem Blue Cross Life and Health Insurance Company ("Anthem"). The defendant, Rooney's ex-wife, was named the beneficiary of the Policy and collected the death benefits from Anthem after Rooney passed away. Plaintiff brings this lawsuit claiming that Defendant was not entitled to the death benefits. This matter is before the Court on Defendant's motion to dismiss. (Doc. No. 3.) For the reasons discussed below, the Court denies the motion.

## BACKGROUND

On May 24, 2007, Defendant Amy Karin Hogan f/k/a Rooney ("Hogan" or "Defendant") and decedent John Christopher Rooney ("Rooney") were married. (Doc. No. 1-1, Complaint ("Compl.") ¶ 6.) While Hogan and Rooney were married, Rooney became the owner of an Anthem Blue Cross Basic Life Insurance Policy in the amount of $90,000 (the "Policy"). (Compl. ¶ 8.) Rooney named Hogan the sole beneficiary under the Policy. (Doc. No. 6-4 at 4.)

On January 24, 2012, Hogan and Rooney divorced. (Doc. No. 1-1, Ex. A (the "Divorce Decree").) The Divorce Decree awarded Rooney exclusive title to and ownership of the Policy. (Divorce Decree at 12.) On December 6, 2016, Rooney passed away. (Compl. ¶ 11.) Rooney never changed the beneficiary designation under the Policy, however, and Hogan remained the sole beneficiary at the time of Rooney's death. (Compl. ¶ 13.) On May 7, 2017, Hogan submitted to Anthem a Beneficiary Claim Form requesting payment for the applicable death benefits under the Policy. (Doc. No. 6, ¶ 6; Doc. No. 6-5.) On May 8, 2017, Anthem issued a check in the amount of $90,000.00 to Hogan as payment of the applicable death benefits under the Policy. (Doc. No. 6, ¶ 7; Doc. No. 6-6.)

On May 4, 2017, Martens was appointed Personal Representative of the Estate of the Estate of John Christopher Rooney. (Doc. No. 1-1, Ex. A.) When Martens contacted Anthem to inquire about the Policy, Anthem informed her that Hogan was the sole beneficiary. (Compl. ¶¶ 12-13.)

On October 30, 2017, Martens filed this suit against Hogan alleging breach of contract, conversion, and unjust enrichment. Hogan now moves to dismiss Martens' claims under Federal Rule of Civil Procedure 12(b)(6). (Doc. No. 3.)

## DISCUSSION

### I.     Legal Standard

In deciding a motion to dismiss under Rule 12(b)(6), a court assumes all facts in the complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the complainant. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986). In doing so, however, a court need not accept as true wholly conclusory allegations, *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions drawn by the pleader from the facts alleged, *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990). A court deciding a motion to dismiss may consider the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint. *See Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555. As the Supreme Court reiterated, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster under *Twombly*. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S.

at 555). In sum, this standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Twombly*, 550 U.S. at 556.

## II. Martens' State Law Claims

Hogan moves to dismiss Martens' state law claims alleging that the claims are improper attempts to "sidestep ERISA law," which Hogan claims "supersedes any and all state laws insofar as they relate to any employee benefit plan." (Doc. No. 5 at 7, 10.) The motion presents a two-part inquiry: (1) whether Anthem properly distributed the proceeds to Hogan, and if it did, (2) whether ERISA preempts Martens' post-distribution claims of breach of contract, conversion, and unjust enrichment.

### A. Plan Documents Rule

Hogan and Martens agree that Anthem appropriately paid to Hogan the death benefits under the Policy. (Doc. No. 5 at 4-6; Doc. No. 8 at 4.) Both parties cite *Kennedy v. Plan Adm'r for DuPont Sav. & Inv. Plan*, for the principle that an ERISA plan administrator must disburse benefits according to the directives of the plan documents, known as the "plan documents rule." 555 U.S. 285, 299-300, 303 (2009); *see also Matschiner v. Hartford Life & Accident Ins. Co.*, 622 F.3d 885 (8th Cir. 2010). *Kennedy* involved the question of whether, under ERISA's anti-alienation provision, the limitation on assignment or alienation of ERISA plan benefits invalidated the act of a divorced spouse waiving via divorce decree her entitlement to the proceeds of a pension plan. *See* 29 U.S.C. § 1056(d)(1). The Supreme Court held that the plan administrator must distribute the proceeds in accordance with the beneficiary designation in the plan documents. *Kennedy*, 555 U.S. at 299-300.

4

Here, although the Divorce Decree awarded Rooney exclusive title to and ownership of the Policy, Rooney never designated a new beneficiary after he and Hogan were divorced. (Divorce Decree at 12; Compl. ¶ 13.) Consequently, Hogan was the only beneficiary under the Policy at the time of Rooney's death. The Court therefore concludes that Anthem properly distributed the proceeds to Hogan.

### B.    Post-Distribution State Law Claims

Martens' state-law claims are based on Hogan's alleged breach of the Divorce Decree, not on any breach of the Policy. Specifically, Martens alleges that Hogan contractually waived her rights to the proceeds of the Policy by signing the Divorce Decree, and by receiving and accepting the funds breached the Divorce Decree, unlawfully converted the funds, and was unjustly enriched at Martens' expense. (Compl. ¶¶ 20-32.) In response, Hogan argues that Martens' claims are preempted by ERISA. (Doc. No. 5 at 10.) Specifically, Hogan contends that Martens' claims rely on Minnesota's Revocation by Dissolution of Marriage statute, which is preempted by ERISA's anti-alienation provision. *See* Minn. Stat. § 524.2-804, subd. 1 (Revocation by Dissolution of Marriage); 29 U.S.C. § 1056(d)(1) (ERISA anti-alienation provision); (Doc. No. 5 at 7). ERISA's anti-alienation provision prohibits any effort to assign or alienate an ERISA participant's plan benefits. 29 U.S.C. § 1056(d)(1) ("Each pension plan shall provide that benefits provided under the plan may not be assigned or alienated.").

The remaining issue is whether ERISA's anti-alienation provision preempts post-distribution suits against ERISA beneficiaries. The Court and parties have been

5

unable to locate any cases directly on point from the Eighth Circuit.  In addition, although *Kennedy* requires plan administrators to follow the "plan documents rule," the Court expressly left open the question "as to whether [an] Estate could have brought an action in state or federal court against [the beneficiary] to obtain the benefits after they were distributed." *Id.* at 300, n.10.  However, numerous other courts, relying on *Kennedy*, have allowed individuals and estates to pursue state-law claims to recover ERISA funds from beneficiaries after disbursement by a plan administrator.  *See Andochick v. Byrd*, 709 F.3d 296, 301 (4th Cir. 2013) (finding "no conflict with either ERISA's objectives or relevant Supreme Court precedent" in allowing a post-distribution suit against an ERISA beneficiary); *Hohu v. Hatch*, 940 F. Supp. 2d 1161, 1175 (N.D. Cal. 2013) (holding ERISA anti-alienation provision does not preempt state-law claims); *Flesner v. Flesner*, 845 F. Supp. 2d 792 (S.D. Tex. 2012) (holding ERISA did not preempt a state-law claim for breach of a divorce decree).  In *Andochick*, the Fourth Circuit "adopt[ed] the same view as every published appellate opinion to address the question" in holding that "ERISA does not preempt post-distribution suits against ERISA beneficiaries."  709 F.3d at 301 (citing *Estate of Kensinger v. URL Pharma, Inc.*, 674 F.3d 131, 136 (3d Cir. 2012); *Appleton v. Alcorn*, 291 Ga. 107, 728 S.E.2d 549, 551-52 (2012), *aff'g*, 308 Ga. App. 663, 708 S.E.2d 390, 392 (2011); *Sweebe v. Sweebe*, 474 Mich. 151, 712 N.W.2d 708, 714 (2006); *Pardee v. Pers. Representative for Estate of Pardee*, 112 P.3d 308, 315-16 (Okla. Civ. App. 2004)).

   Here, Martens claim to the proceeds of the Policy arises out of independent legal duties unrelated to ERISA.  Hogan cites *Egelhoff v. Egelhoff ex rel. Breiner*, 532 U.S.

141 (2001), in support of her argument that the state-law claims at issue here run afoul of ERISA's anti-alienation provision and conflict with ERISA plan administration principles.

*Egelhoff* does not lend support to Hogan's argument that ERISA preempts post-distribution claims of the kind at issue here. In *Egelhoff*, the Supreme Court held that ERISA preempted the application of a state statute that automatically revoked, upon divorce, any designation of a spouse as a beneficiary of an ERISA benefit plan. 532 U.S. at 146-50. The Supreme Court based its holding on the fact that the state statute required administrators to "pay benefits to the beneficiaries chosen by state law, rather than to those identified in the plan documents," *id.* at 147, creating a "direct[ ] conflict[ ] with ERISA's requirements that plans be administered, and benefits be paid, in accordance with plan documents," *id.* at 150.

The holdings in *Egelhoff* and *Kennedy* create a simple, easy-to-follow scheme for plan administrators undertaking the process of reviewing beneficiary claims and disbursing benefits. Consistent with the holdings in those cases, ERISA preempts state-law claims challenging the disbursement of benefits according to plan documents. Here, Martens' claims do not challenge Anthem's distribution of benefits to Hogan, but instead challenge Hogan's right to "retain the benefits she received" in light of her contractual obligations set forth in the Divorce Decree. (Doc. No. 8 at 5.) As such, the state-law claims do not implicate the overriding principles set forth in *Egelhoff* and *Kennedy*. Simply put, Martens' suit does not require Anthem to pay benefits to anyone other than the named beneficiary. The suit instead relates to legal obligations separate

7

from ERISA, *i.e.*, contractual obligations arising from the Divorce Decree. Accordingly, *Egelhoff* is inapposite.

The Court concludes that ERISA's anti-alienation provision does not shield the distributed funds from Martens' claims, which are based on the Divorce Decree. Martens has therefore pleaded enough facts to state claims of breach of contract, conversion, and unjust enrichment.

## III.   Hogan's Request for Attorney Fees

In Hogan's motion to dismiss, she makes a request for an award of attorney fees incurred in the removal to federal court and subsequent motion to dismiss. (Doc. No. 5 at 9-10.) Martens opposes the request. (Doc. No. 8 at 8.) Any award of attorney fees at this stage of the litigation would be premature. The Court, however, reserves the right to award attorney fees to either party to the extent permitted by law at the conclusion of the litigation.

### ORDER

Based on the files, record, and proceedings herein, **IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss (Doc. No. [3]) and request for attorney fees are **DENIED**.[1]

Dated:  April 18, 2018                     s/Donovan W. Frank
                                           DONOVAN W. FRANK
                                           United States District Judge

---

[1] The Court believes that it is in the best interests of the parties to settle this case. If the parties would like the Court's assistance in pursuing a settlement, they may contact chambers and the Court will help coordinate priority scheduling of a settlement conference with the Magistrate Judge.